## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

TAI HUNG THACH,

      Petitioner,

    v.

JESSICA SAGE,

      Respondent.

No. 4:26-CV-01107

(Chief Judge Brann)

## MEMORANDUM OPINION

### JULY 29, 2026

Tai hung Thach is an immigration detainee in the custody of the United States Department of Homeland Security, Immigration and Customs Enforcement (ICE).  He is currently detained at the Federal Correctional Institution in Lewisburg, Pennsylvania.  He commenced this action by filing a petition for a writ of habeas corpus under 28 U.S.C. § 2241, seeking immediate release based on his claim that his continued detention has become unconstitutional.  For the following reasons, the Court will grant Thach's Section 2241 petition.

## I.    BACKGROUND

Thach is a citizen and native of Vietnam.[1]  He has lived in the United States for more than 35 years after his family entered the country as refugees in 1991,

---

[1]    *See* Doc. 11-2 ¶ 2.

when he was a teenager.[2]  When he entered the United States in 1991, Thach was admitted as a Legally Admitted Permanent Resident (AM 1).[3]

Thach has two state criminal convictions.  In August 2010, he pled guilty to possessing an instrument of crime and simple assault and was sentenced to nine months' probation.[4]  In December 2013, he pled guilty to aggravated assault and was sentenced to five to ten years' incarceration.[5]

On December 1, 2017, Thach encountered ICE while he was serving his sentence at SCI Camp Hill for the aggravated assault conviction.[6]  The following year, Thach was charged as removable under Section 237(a)(2)(A)(iii) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1227(a)(2)(A)(iii), for having committed an aggravated felony.[7]  On June 20, 2018, an Immigration Judge ordered Thach removed to Vietnam.[8]  Thach waived any appeal,[9] thus rendering the Immigration Judge's order a final order of removal.[10]

On October 2, 2018, Thach entered ICE custody in York, Pennsylvania.[11]  Less than three months later, Thach was released from ICE custody on an order of

---

[2]  *See* Doc. 1 ¶ 1; Doc. 11-2 ¶ 3.
[3]  Doc. 11-2 ¶ 3.
[4]  *Id.* ¶ 5.
[5]  *Id.* ¶ 12.
[6]  *Id.* ¶ 13.
[7]  *See id.* ¶ 14; 8 U.S.C. § 1227(a)(2)(A)(iii).
[8]  Doc. 11-2 ¶ 15; Doc. 11-3 at 2.
[9]  *See* Doc. 11-3 at 2.
[10]  *See* Doc. 11-2 ¶ 15; 8 C.F.R. § 1241.1(b).
[11]  Doc. 11-2 ¶ 16.

supervision.[12]  Following his release from ICE custody in 2018, it does not appear that Thach had any further encounters with law enforcement or issues with ICE supervision for approximately seven years.  Respondent's recitation of facts provides no information for the seven-year stretch between when Thach was released on supervision in December 2018 to when his release was revoked in December 2025 at a routine immigration check-in appointment.[13]  Thach avers that during this time, he devoted himself to his work and family.[14]

Thach has been in ICE custody since his December 9, 2025 revocation of release and re-detention, having been first held in Moshannon Valley Processing Center and then FCI Lewisburg, where he is presently detained.[15]  He lodged the instant Section 2241 petition on June 17, 2026, alleging that his removal to Vietnam is not reasonably foreseeable and his continued detention is unconstitutional.  Respondent contends, on the contrary, that Thach's removal is reasonably foreseeable.  Thach filed a traverse on July 24, 2026,[16] so his Section 2241 petition is ripe for disposition.

---

[12]  *Id.* ¶ 17.
[13]  *See id.* ¶¶ 17-18.
[14]  Doc. 1 ¶ 28.
[15]  *See* Doc. 11-2 ¶¶ 18-20.
[16]  Doc. 12.

## II.    STANDARD OF REVIEW

Under 28 U.S.C. § 2241(c), a prisoner or detainee may receive habeas relief only if he "is in custody in violation of the Constitution or laws or treaties of the United States."[17]  Because Thach filed the instant petition while he was detained within the jurisdiction of this court, is still currently detained by ICE, and asserts that his continued detention violates due process, this court has jurisdiction over his Section 2241 petition.[18]

## III.    DISCUSSION

Thach brings an as-applied due process challenge to his continued detention under 8 U.S.C. § 1231.  He argues that his removal to Vietnam is not reasonably foreseeable, so he should be released.[19]  The government counters that "travel documents were requested from the Consul General of the Embassy of Vietnam" and therefore Thach's "removal is significantly likely in the reasonably foreseeable future."[20]

Section 1231(a) of Title 8 of the United States Code "governs the detention, release, and removal of individuals 'ordered removed.'"[21]  Section 1231(a)(1)(A)

---

[17]    *See* 28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490 (1989).
[18]    *See Zadvydas v. Davis*, 533 U.S. 678, 699 (2001); *Spencer v. Kemna*, 523 U.S. 1, 7 (1998); *Khalil v. President, United States*, 164 F.4th 259, 277-79 (3d Cir. 2026) (holding that detention specific claims, like length and conditions of confinement, do not "arise from" removal proceedings and can be addressed by district courts).
[19]    *See* Doc. 1 at p. 16.
[20]    Doc. 11 at 7.
[21]    *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022).

provides that, following entry of a final order of removal, the United States generally must effectuate the noncitizen's removal during a 90-day "removal period."[22]  That 90-day period generally begins to run, for noncitizens who are detained or confined for criminal offenses, on "the date the alien is released from [non-immigration] detention or confinement."[23]  Detention is mandatory during this first 90 days.[24]

Following expiration of the 90-day removal period, certain noncitizens "may" be detained if they fall into one of four distinct categories: "(1) those who are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those [determined] 'to be a risk to the community'; and (4) those [determined] to be 'unlikely to comply with the order of removal.'"[25] How long a noncitizen may be detained pursuant to Section 1231(a)(6) following the 90-day removal period has been the subject of considerable litigation.

In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court held that Section 1231(a)(6) "does not permit indefinite detention," but rather "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States."[26]  Of course, the phrase "a

---

[22]  8 U.S.C. § 1231(a)(1)(A).
[23]  *Id.* § 1231(a)(1)(B)(iii).
[24]  *Id.* § 1231(a)(2) ("During the removal period, the Attorney General *shall* detain the alien." (emphasis added)).
[25]  *Arteaga-Martinez*, 596 U.S. at 578-79 (quoting 8 U.S.C. § 1231(a)(6)).
[26]  *Zadvydas*, 533 U.S. at 689.

period reasonably necessary to bring about that alien's removal" provides no easily ascertainable guidelines.[27]  According to *Zadvydas*, a period reasonably necessary to bring about a noncitizen's removal from the United States is presumptively six months.[28]

Thus, noncitizens detained under Section 1231(a)(6) past the six-month presumptively constitutional period may bring an as-applied Due Process Clause challenge to their continued detention should that detention become prolonged and potentially unlawful.[29]  Specifically, if the noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must either rebut that showing or release the [noncitizen]."[30]

---

[27]  *See Arteaga-Martinez*, 596 U.S. at 586 (Thomas, J., concurring in part); *see also Guerrero-Sanchez v. Warden York Cnty. Prison*, 905 F.3d 208, 223-24 (3d Cir. 2018), *abrogated on other grounds by Johnson v. Arteaga-Martinez*, 596 U.S. 573 (2022).  In *Johnson v. Arteaga-Martinez*, the Supreme Court abrogated the Third Circuit's holding in *Guerrero Sanchez* that Section 1231(a)(6) presumptively "requires the Government to offer detained noncitizens bond hearings after six months of detention in which the Government bears the burden of proving by clear and convincing evidence that a noncitizen poses a flight risk or a danger to the community." *Arteaga-Martinez*, 596 U.S. at 576.  The Court did not address the merits of the petitioner's individualized Due Process Clause challenge or hold that such a claim could not be pursued.  *See id.* at 583-84.  Moreover, the United States reassured the *Arteaga-Martinez* Court that "as-applied constitutional challenges" to prolonged detention under Section 1231(a)(6) "remain available." *Id.* at 583.

[28]  *See Zadvydas*, 533 U.S. at 701.

[29]  *See Zadvydas*, 533 U.S. at 699-701; *Guerrero-Sanchez*, 905 F.3d at 225; *see also Johnson v. Guzman Chavez*, 594 U.S. 523, 529 (2021) (citing *Zadvydas*, 533 U.S. at 689, 701).

[30]  *Guzman Chavez*, 594 U.S. at 529 (internal quotation marks omitted) (citing *Zadvydas*, 533 U.S. at 701); *see also* 8 C.F.R. §§ 241.4, 241.13 (establishing agency procedures for determining whether noncitizens detained under 1231(a) past 90-day removal period should be released on supervision or remain in detention).

Thach has been re-detained by ICE since December 9, 2025, following nearly seven years of uneventful and apparently compliant supervised release.  As noted above, Thach's current detention is not his initial detention following issuance of a final order of removal; rather, his release has been revoked, apparently pursuant to 8 C.F.R. § 241.13(i).  That regulation provides as follows:

(i) Revocation of release—

(1) Violation of conditions of release. Any alien who has been released under an order of supervision under this section who violates any of the conditions of release may be returned to custody and is subject to the penalties described in section 243(b) of the Act. In suitable cases, the HQPDU shall refer the case to the appropriate U.S. Attorney for criminal prosecution. The alien may be continued in detention for an additional six months in order to effect the alien's removal, if possible, and to effect the conditions under which the alien had been released.

(2) Revocation for removal. *The Service may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future*. Thereafter, if the alien is not released from custody following the informal interview provided for in paragraph (h)(3) of this section, the provisions of § 241.4 shall govern the alien's continued detention pending removal.

(3) Revocation procedures. Upon revocation, the alien will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision. The

revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.[31]

Respondent does not address this regulation. Respondent asserts only that Thach "was served with a Notice of Revocation of Release."[32] Thach, however, provided a copy of the Notice of Revocation of Release, which broadly states that his release was revoked based on "changed circumstances in [his] case" inasmuch as "ICE has determined that there is a significant likelihood of removal in the reasonably foreseeable future in [his] case."[33] Consequently, Thach's release was revoked pursuant to 8 C.F.R. § 241.13(i)(2).

This distinction is important. Despite Respondent's assertion that "Thach cannot demonstrate that he will not be removed within the reasonably foreseeable future,"[34] that is not Thach's burden to prove at this point in the lengthy removal proceedings. Rather, pursuant to the plain language of the relevant regulation, it is *the government* who bears the burden of showing that there have been "changed circumstances" which indicate that "there is a significant likelihood that the alien may be removed in the reasonably foreseeable future."[35]

---

[31]  8 C.F.R. § 241.13(i) (emphasis added).
[32]  *See* Doc. 11 at 4; Doc. 11-2 ¶ 18.
[33]  Doc. 1-1 at 1.
[34]  Doc. 11 at 7.
[35]  *See* 8 C.F.R. § 241.13(i)(2); *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 150 & n.2 (D. Mass. 2025) (noting that it is improper burden shifting to require petitioner—who was suddenly re-detained following 10 years of uneventful supervised release—to establish a "good reason that his removal is not likely to occur in the reasonably foreseeable future").

Here, the government has failed to carry its burden. The only evidence of changed circumstances on which Respondent appears to rely is the fact that on February 20, 2026, a travel document request was submitted to the Vietnamese embassy.[36] Simply put, this is not enough.

First, and most importantly, Thach's release was revoked before the travel document request was made. There is nothing in the December 9, 2025 Notice of Revocation of Release explaining or even alluding to what circumstances "changed" in Thach's situation that would authorize the revocation of his release and re-detention under Section 241.13(i)(2). Nor has Respondent explained what changed circumstances warranted the revocation of release.

Second, Respondent has not offered any post-hoc, individualized evidence showing why Thach's travel documents could be expected in the reasonably foreseeable future such that he should remain in detention. Respondent has not even proffered generalized information regarding, for example, repatriation statistics for Vietnamese immigrants like Thach who arrived in the United States as refugees before 1995.[37] It appears that the entirety of the government's evidence is an affidavit from deportation officer Alex E. Hans averring that because "a request

---

[36] *See* Doc. 11 at 7.

[37] *See Nguyen v. Sage*, No. 3:26-cv-1661, 2026 WL 2087362, at *4 (M.D. Pa. July 20, 2026) (Mariani, J.) (finding that government failed to rebut petitioner's showing that his removal to Vietnam was significantly unlikely in the reasonably foreseeable future even when relying on general repatriation statistics).

for travel documents is pending with the Consul General of the Embassy of Vietnam[,] removal is significantly likely in the reasonably foreseeable future."[38] Needless to say, the constitutional due process protections of the Fifth Amendment require more than such conclusory statements.[39]

Thach, on the other hand, has provided declarations from Dr. Thao L. Ha and Attorney Tin Thanh Nguyen.[40]  Those expert affidavits aver, *inter alia*, that the diplomatic process for repatriating a pre-1995 Vietnamese refugee is highly individualized and that the fact-specific vetting process takes a significant amount of time.[41]  As other courts in this district have noted, simply "[r]equesting travel documents from Vietnam for a pre-1995 Vietnamese refugee does not mean they will be issued, and sometimes the Vietnamese Embassy constructively denies repatriation by simply not responding to ICE's request for travel documents."[42]

Finally, the Court observes that Respondent has put forth no argument or evidence regarding why Thach's removal to Vietnam is more likely now than it was seven years ago when Thach could not be repatriated and was released on

---

[38]   Doc. 11-2 ¶ 28.
[39]   *See Phan v. Warden of Fed. Correctional Institution Lewisburg*, No. 3:26-cv-00770, 2026 WL 1080390, at *6 (M.D. Pa. Apr. 21, 2026) (Mehalchick, J.) (collecting cases); *Nguyen*, No. 3:26-cv-1661, 2026 WL 2087362, at *4 ("The conclusory statements contained in Mr. Hans' declaration do not suffice to satisfy the Respondent's burden."); *Nguyen v. Sage*, No. 3:26-cv-1151, 2026 WL 1348513, at *7 (M.D. Pa. May 14, 2026) (Mariani, J.).
[40]   Docs. 12-1, 12-2, respectively.
[41]   *See* Doc. 12-1 ¶¶ 10-16; Doc. 12-2 ¶¶ 5-9.
[42]   *Nguyen*, No. 3:26-cv-1151, 2026 WL 1348513, at *6.

supervision.[43]  It would seem reasonable to expect that the government, at the very least, would be able to proffer justification for why (1) Thach was taken into custody during his routine check-in in December 2025; (2) his release was revoked despite no violations thereof; and (3) he was placed in detention in FCI Lewisburg, which implicates conditions of confinement that are no different than those experienced by convicted criminals.

In view of the foregoing, the Court will grant Thach's habeas petition.  His release "may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances,"[44] so the Court will order Respondent to release him from custody within 48 hours and to restore the conditions of his prior supervised release.[45]

---

[43]   *See id.*, at *8 (citing *Thach v. English*, No. 3:26-cv-309, 2026 WL 1109344, at *2 (N.D. Ind. Apr. 26, 2026) (granting petition where government failed to rebut showing that petitioner's removal was unlikely in the reasonably foreseeable future and the respondent "does not explain why efforts to remove Thach to Vietnam will be successful now when they were unsuccessful in 2012 and when Vietnam has historically refused to accept individuals who entered the United States before 1995" for repatriation)).

[44]   *Zadvydas*, 533 U.S. at 700.

[45]   *See Nguyen*, No. 3:26-cv-1151, 2026 WL 1348513, at *8 (collecting cases).

**IV.   CONCLUSION**

For all the above reasons, the Court will grant Thach's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  An appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge